### In re MONTGOMERY.

### In re HUEY & PHILP HARDWARE CO.

(District Court, N. D. Texas, at Abilene. March 2, 1911.)

#### No. 198.

1. BANKRUPTCY (§ 340\*)—HEARING—BURDEN OF PROOF.

Where a tendered claim against a bankrupt was contested on the ground that the notes on which the claim was based were forgeries, but the claim was supported by deposition and the proof required by the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), duly executed by the claimant's treasurer, this made a prima facie case in favor of the claimant and cast the burden on the contestant.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.\*]

2. BANKRUPTCY (§ 342½\*)—FINDINGS OF REFEREE—RULING—BURDEN OF PROOF —PREJUDICE.

Where the evidence supported a referee's finding that notes the basis of a claim in bankruptcy were forgeries, an erroneous ruling that the burden of establishing the claim was on the claimant, after the introduction of the formal proof required by the bankruptcy act, was harmless.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 342½.\*]

3. BANKRUPTCY (§ 330\*)—CLAIMS—PROOF—PROCEEDINGS.

In proceedings to establish a claim against a bankrupt's estate, it is not necessary that the referee should adhere to any prescribed order of proof.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 330.\*]

4. BANKRUPTCY (§ 340\*)—GENUINENESS—FORGERY—EVIDENCE.

In a proceeding to establish a claim against a bankrupt's estate based on certain notes, evidence held to sustain a referee's finding that the notes were forgeries.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.\*]

In the matter of bankruptcy proceedings of C. M. Montgomery. The claim of the Huey & Philp Hardware Company was disallowed by the referee and the case certified. Affirmed.

Harry Tom King, for trustee.

Spence, Knight, Baker & Harris, for claimant.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MEEK, District Judge. Huey & Philp Hardware Company presented its claim against the bankruptcy estate of C. M. Montgomery for allowance. The proof of claim was in proper form, duly verified, and was evidenced by two original promissory notes attached thereto, purporting to be signed by C. M. Montgomery, the bankrupt. The trustee of the bankruptcy estate contested the claim of Huey & Philp Hardware Company and filed a verified plea to the effect that same was not a valid claim against the estate; and, further, that the two notes evidencing its claim were forgeries as to the bankrupt; that same were never executed by him nor by any one thereunto authorized by him.

Upon the issue thus joined the referee heard proofs submitted in behalf of the claimant and the trustee and thereafter held that the notes were forgeries as to the bankrupt and entered an order disallowing and rejecting the claim. The claimant, feeling aggrieved thereat, has brought this matter before me by certificate of review.

Upon the hearing of this contest the referee ruled that the burden was upon the claimant to go forward, and directed it to proceed with testimony in support of its claim. He also ruled that claimant must show by a preponderance of the evidence that the notes evidencing its claim were the genuine undertakings of the bankrupt. The claimant excepted to this ruling. The claim of Huey & Philp Hardware Company as evidenced by the two promissory notes was supported by deposition and proof, as required by the bankruptcy act, duly executed by the treasurer of claimant. This constituted a prima facie case against the bankruptcy estate and cast the burden upon the contestant or objector to go forward with proof. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584.

In a suit on a promissory note the plaintiff, at common law, must have proved the execution of the note. Its execution was a fact to be established by appropriate evidence just as any other fact forming the basis of the cause of action. Under the statute of Texas, the common-law rule is abolished, unless the defendant keeps it in force by an affidavit of forgery. If the affidavit is made, the statute is practically nonexistent, and the case stands as at common law, and as though there was no statute on the subject. The Supreme Court of the United States, in Whitney v. Dresser, supra, holds that the proof of claim in bankruptcy makes a prima facie case; that the contestant of a claim has the burden of making good his contest; and that, unless he makes good his contest by appropriate proof, the prima facie case made by the technical proof of claim under the bankruptcy act prevails. It will be observed that the proof in bankruptcy makes a prima facie case, and the court declares that the contestant must make good his contest without qualifying the character of the contest. Therefore it seems to me to be immaterial that the contest is based upon the plea of non est factum or forgery. The proof with the original notes attached made a prima facie case, which must prevail unless he who attacks it makes good by proof his attack. He may make an affidavit of forgery, but it has no legal effect, is not proof, and does not change the situation in the least. Before he can destroy the claimant's case, he must show affirmatively that the instrument on which the proof is

based is forgery; otherwise the contestant has not sustained his contest by proof. The ruling of the referee as to the burden of proof was erroneous.

But here the claimant went forward with its proof, and in turn the contestant offered proof. There was no request for a postponement or continuance, and the evidence offered before the referee seems to have been quite full. Notwithstanding the ruling that the burden of proof was upon the claimant, the referee found that the contestant, the trustee in bankruptcy, sustained and established by greater weight of the evidence his contention to the effect that the notes evidencing the claim of Huey & Philp Hardware Company are forgeries; that they were not executed by C. M. Montgomery, the bankrupt, nor by any one for him with his knowledge or consent, or by his authority, express or implied.

In event the evidence supports this finding of the referee, then in the state of the record, as I view it, his erroneous ruling as to the burden of proof becomes harmless. It is then reduced to a question of order of introduction of evidence, and the determination of this was in his discretion. It is not essential that he should adhere to any prescribed order. Fletcher, Equity Pleading & Practice, § 638; Thompson on Trials, § 344. As there has been no request for an order returning the matter to the referee for the production of other and additional evidence in behalf of claimant, I deem it proper to consider and pass upon the other questions raised in the light of the evidence as it is now exhibited in the record.

The testimony upon which claimant lays greatest stress for a reversal of the referee's action is that of the bankrupt himself. He was placed upon the stand at the instance of claimant, and, upon being shown signatures to the promissory notes evidencing his purported obligation to claimant, he testified they were his genuine signatures. The attorney examining him did not exhibit the face of the notes, just his purported signatures. Prior to this, upon being shown his signatures to three different schedules annexed to his voluntary petition and filed by him in this proceeding, he denied that they were his. Here, also, the instruments to which his signatures were affixed were concealed from his view, and at the time of giving this evidence he was denied inspection thereof. Later in the examination, and when advised of the nature and contents of the different instruments, he testified differently, denying those signatures he had affirmed and affirming those he had denied. This testimony is calculated to affect materially the weight to be given the bankrupt's evidence, but it is by no means conclusive of the issue. One might be misled and deceived by a clever imitation of his signature when called upon to pass upon its genuineness without seeing or being apprised of the nature and contents of the instrument to which it is affixed. Again, one might be mistaken and deny his genuine signature when called upon to pass on its genuineness without seeing or being apprised of the nature and contents of the instrument to which it is affixed, especially when, as here, the bankrupt knew that his signature had been forged to many obligations and promissory notes which were held by various and sundry persons at different places in Texas.

The bankrupt, C. M. Montgomery, lived at Abilene, Tex. His son, R. W. Montgomery, at the time of the execution and delivery of the promissory notes in question to Huey & Philp Hardware Company. resided at Sweetwater, and there conducted a business in the name of Montgomery Hardware Company. These notes were given by R. W. Montgomery in settlement of an account with claimant for merchandise purchased from it. They bore the signatures of Montgomery Hardware Company, R. W. Montgomery, and C. M. Montgomery. There is no evidence that the bankrupt had any interest whatever in the Montgomery Hardware Company. He testifies he did not have any interest therein. He denies positively having signed any obligation whatever to Huey & Philp Hardware Company, especially the notes in question. He also denies having authorized his son or any one to execute any such obligation for him. One is warranted in concluding from the evidence here that R. W. Montgomery forged the signature of his father to many different obligations and promissory notes. The distressing situation of C. M. Montgomery, a man of 59 years of age and the father of R. W. Montgomery, is in part revealed by the following excerpt from his examination on the witness stand:

"Q. I want to ask you if it is not true that after your son R. W. Montgomery left the country, after it transpired at Ft. Worth that he had forged many notes, at different banks, did you or not see a letter that was published in the papers addressed by R. W. Montgomery to a Mr. Harris? A. Yes, sir. Q. You read that letter, didn't you? A. Yes. Q. I want to ask you if you are not denying all those signatures that appear on notes given because of this clause in that letter: 'Tell my father not to pay out a nickel, as he is not responsible for any of my paper. He can't pay it all, and I don't want him to pay any.' You are taking your cue from that, aren't you? A. No, sir."

Because of the referee's ruling as to the burden of proof, and because of the bankrupt's conflicting and uncertain testimony with relation to various of his signatures, I have scrutinized with great care the evidence upon which the referee based his finding to the effect the purported signatures of the bankrupt to claimant's notes were forgeries. The record contains a number of admitted genuine signatures of C. M. Montgomery. It also contains a number of signatures which he repudiates as forgeries. S. P. Berry, the only expert as to handwriting called at the trial of the issue before the referee, having these various signatures before him, gave it as his opinion that the signatures of C. M. Montgomery affixed to the promissory notes evidencing proponent's claim were not genuine, but forgeries. To my mind these signatures, while fairly clever imitations, contain internal evidences of their spuriousness which is manifest upon a careful examination even to the nonexpert. I will not undertake to review these evidences. It will suffice to say they are manifest to me, and no doubt were to the referee who first was called to pass on the issue.

I concur with him in his finding on this issue of fact, and it will therefore be affirmed. The costs of this certificate will be taxed against claimant.